## Case No. 8,499.

### The LOON.

[7 Blatchf. 244.] [1]

Circuit Court, S. D. New York. May 9, 1870.

SHIPPING—MASTER—BILL OF LADING—GOODS NOT ON BOARD—AUTHORITY FROM CONTRACTING PURCHASER OF VESSEL — MONEY ADVANCED ON BILL.

1. The master of a vessel has no power, by signing a bill of lading for goods which are not on board, to charge the vessel or her owner.

[Cited in Robinson v. Memphis & C. R. Co., 9 Fed. 139.]

2. Nor has he such power, where the vessel is. by the consent of her general owner, in the hands of a party who has contracted to purchase her, and the latter distinctly authorizes the signing of the bill of lading and induces the master to sign it.

3. Where the party who had contracted to purchase the vessel, having possession and control of her, procured. by misrepresentation, the preparation of a false bill of lading, covering goods not on board, and the master of the vessel, in reliance on the representation. signed it: *Held*, that the vessel was not liable for the value of the goods named in the bill of lading, but not on board, to a person who, in reliance on the bill of lading. advanced money thereon.

[Cited in The Asphodel, 53 Fed. 836.]

[Appeal from the district court of the United States for the Southern district of New York.]

In admiralty.

Erastus C. Benedict, for libellants.

Welcome R. Beebe and Charles Donohue, for claimant.

WOODRUFF, Circuit Judge. John M. Green, the claimant, owner of the schooner Loon, entered into a contract with Charles W. Gilley for the sale of the schooner, then in the port of Baltimore, on condition that he should pay therefor the sum of five hundred dollars before she should leave Baltimore, and the balance, thirty-five hundred dollars, on or within five days after her arrival in New York, in default of which latter payment the first-named five hundred dollars should be forfeited to Green, as damages for the failure of Gilley to perform, and Gilley was given the privilege of loading the vessel for his own account, he paying all expenses from the time of loading till her discharge in New York. The proof shows that Gilley took charge of the loading of the vessel with lumber, and employed a stevedore, and that all the lumber which he desired to have placed on board was put on board, to his satisfaction. At or about the time the cargo was on board, Gilley told Green, the owner, that he desired the master of the schooner to call at the office of the ship's broker and sign bills of lading. Green, having no knowledge of the quantity of the cargo, and having no reason to suppose that any fraud was contemplated, meeting the master, delivered the message. Gilley went

1 [Reported by Hon. Samuel Blatchford. District Judge, and here reprinted by permission.]

to the office of the broker and requested him to fill up two bills of lading, and gave him verbally the quantities and kinds of lumber to be inserted therein as the cargo of the vessel, and such bills of lading were drawn. Thereafter, the master of the schooner called at the broker's office himself, wholly ignorant of the quantity of cargo on board, and, relying solely on the correctness of the bills of lading prepared by Gilley's direction, signed the bills of lading, by which the lumber, of various quantities and kinds, was stated to have been shipped, consigned to the libellants. With those bills of lading, Gilley came to New York, and, in faith thereof, the libellants advanced to him several thousand dollars. When the vessel arrived she delivered all the lumber that was shipped, but it proved to be only about half the quantity mentioned in the bills of lading. Thereupon the libellants filed their libel to charge the schooner with the deficiency. It further appeared that Gilley paid to Green, the owner, in pursuance of his contract, or on account thereof, in Baltimore, one thousand dollars, and that nothing more had been paid on account of the purchase.

It is now insisted, that the libellants had no lien upon the schooner for the lumber that was never shipped; that the master of the schooner had no authority from the owner of the vessel, either express or implied, to sign bills of lading for cargo not shipped; that Gilley could not bind the schooner or the owner, except to the extent of the cargo shipped; and that the act of Gilley, in inducing the master of the vessel, by a practical misrepresentation, to sign bills of lading which were false, did not create any lien which can be enforced against the schooner.

The question how far a bill of lading imports absolute verity, in favor of a third person who receives it, and, in good faith, in reliance thereon, purchases the goods mentioned therein to have been shipped, or makes advances thereon, is of very great interest and importance to the commercial world; and it is not until within a recent period that the question can be said to be definitely answered, if indeed it can now be deemed settled in all its bearings. From the time of the decision in Lickbarrow v. Mason, 2 Term R. 63, when there was imputed to bills of lading a negotiable quality for certain purposes, there seemed some ground for saying that a third person, dealing with a bill of lading, should be protected in his reliance thereon, according to its exact tenor, against masters, charterers and owners; and that the act of the master should be deemed fully within his authority and conclusive. See Abb. Shipp. (6th Am. Ed.) 323–326, and notes. Such however, does not appear to be the rule as established by modern decisions in England, or the rule in this country. In Grant v. Norway, 10 C. B. 665. and in Hubbersty v. Ward (in the court of exchequer) 18 Eng. Law & Eq. 551, it is held, that the

master of a vessel has no power, by signing bills of lading for goods that are not on board, to charge the owner. The like want of authority of an agent, in other cases, is declared in Coleman v. Riches, 29 Eng. Law & Eq. 323, and illustrations are found in numerous cases cited and commented upon in the three cases above-named. The result would follow, that, if the owner was not charged, neither was the ship, and, therefore, that no lien existed to be enforced in admiralty. It is not necessary, and would not, I think, be profitable, to discuss the question in all its possible relations. The general doctrine of the English cases named has been affirmed in this country, so far as relates to the personal liability of the owner in such a case. See Pars. Merc. Law, 347, and cases there referred to.

The decision of the supreme court of the United States in The Freeman v. Buckingham, 18 How. [59 U. S.] 182, seems to me conclusive of the case now under consideration; and it meets the suggestion that here the schooner was, by the consent of the general owner, in the hands of a party who had contracted to purchase her, and that the latter distinctly authorized the signing of the bills of lading, and induced the master to sign them. Indeed, I am wholly unable to distinguish the present case from that one, and I might, with propriety, have so stated, without enlarging upon the subject. There, the claimant, owner of the Freeman, had made an agreement with one Holmes, for the sale of the schooner to him for a price payable by instalments, and the bill of sale to be delivered when the payments were made, and Holmes meantime to have the entire control and management of the vessel, which was to be in his own employment, victualled and manned by him, and commanded by a master of his own selection. This gave to the purchaser a more unqualified possession and control than Gilley had in the present case. Holmes had, also, paid to the owner five hundred dollars, that being one instalment of the purchase money. The son of Holmes, (to whom the control and management of the vessel were entrusted by the father,) induced the master, by false representations. to sign bills of lading, certifying that certain quantities of flour had been shipped by his, the son's firm, to be carried and delivered to the libellants' agent at Buffalo, to be forwarded to the libellants, as consignees, for account of the shippers. Upon those bills of lading the alleged shippers procured from the libellants advances, which were made in good faith, in reliance upon the bills of lading. Thirteen hundred and sixty barrels of the flour mentioned in these bills of lading were not delivered at Buffalo, and it appeared that they were never in fact shipped. It would be difficult to state a case more exactly like the one before the court in every principle involved. and in every circumstance affecting the liability of

the schooner. The opinion of the court, delivered by Mr. Justice Curtis, discusses the subject with great fulness, and reviews the cases in England and in this country which he deems material to the decision, and the court, without dissent, held, that the maritime law gave no lien upon the vessel for the flour mentioned in the bills of lading but not shipped. The opinion declares, that the master of a vessel has not unlimited authority to sign bills of lading, nor even an apparent authority to do more than sign bills for cargo actually shipped; that the act of the special owner or purchaser gave no additional sanction, as against the general owner; that such a signing by the master, induced by the misrepresentations of the purchaser, was a fraud upon the general owner; and that the fact that the libellants had advanced money on the faith of the bills of lading did not create in their favor an estoppel which prevented such owner from showing that the goods were never shipped. See, also, Vandewater v. Mills, 19 How. [60 U. S.] 82. All this is equally applicable to the present case. Gilley was the purchaser. He, by misrepresentation, procured the preparation of false bills of lading, and the master of the vessel, in reliance thereon, signed them. If he had known they were false, the fraud on the owner would have been no less.

It is true that declarations of Gilley, made in New York after the deficiency was discovered, tended to show that it was through mistake and not through fraud that the lumber shipped did not correspond with the bills of lading. If it were material, I should hold that testimony inadmissible. Gilley could not, by statements in regard to a past transaction, affect the rights of the owner. But the other proof satisfies me that his statement was false, and that all the lumber which he desired to have put on board the schooner was in fact put on board. The decree must be reversed, and the libel be dismissed, with costs.